The next case on our agenda is the case of People of the State of Illinois v. Brandon v. Ezzell, and we have Mr. Ting representing the athlete. Thank you Justice Chetman, Police Department. My name is D.P. James Ting and I do represent the people of the State of Illinois. Your Honor, in my time before you today, I will show you why the defendant's conviction for aggravated battery should be affirmed by this court. Your Honor, it was long established by the Illinois State Constitution that he should… Did he challenge his conviction? He challenges the sentence in terms of his conviction, and that's why it should be affirmed, Your Honor, the sentencing challenge. But, Your Honor, the Illinois State Constitution has long held that in order to determine an appropriate sentence, we must balance the seriousness of the crime versus the rehabilitative potential of the defendant. Now here, we have a defendant who brutally knocked his victim to the ground, and there, as the victim lay helpless on the ground, proceeded to senselessly beat him. You can find this on page 113 of the record. The defendant was thereafter sentenced to five years in the GOC. Now, there are various factors that the defendant states in his brief of why the five-year sentence was too excessive. I want to briefly touch upon a couple of those. Number one, first and foremost, the defendant speaks of his age. Here, the defendant was only 22 years at the time he was sentenced. So because of that, he states that 22 years would take five years of his life. This particular stage of his life would be excessive. The trial court specifically responded to this though. The trial court stated, and I quote, being 22 years old, you don't have much to show for it. You won't work. You get yourself into trouble. You're into drugs and alcohol. You've got, without a doubt, anger management problems, as you can find on page 140 of the record. Now, the pre-sentence investigation report shows particularly what the rehabilitative potential of this particular defendant was. On pages 58 of the record, we see the defendant lived with his father. He had no money in his savings account, no car, no assets. He had dropped out of high school. He had a criminal history dating back to 2001 when he was just 14 years old and had actually gone to juvenile GOC, as you can find on pages 61 and 60 of the record. He did not pay child support. Again, these are all things that show that the rehabilitative potential of this particular defendant was not present. Certainly, age can't be a factor that a trial court should consider, but in this particular instance, we have a defendant who has spent time and time again had opportunities to show a rehabilitative process and has failed to do so. In this particular case, when we have the evidence where he brutally beat his victim five years is the appropriate sentence. The last factor that I want to particularly note on is that the defendant states in his brief that he had a minimal criminal history that was nonviolent. That is simply not the case. The defendant had a longstanding history of violent behavior. And I would point this court specifically to the two order of protections that he had. Now, we had two of his ex-girlfriends who had issued these order of protections testify, the defendant's sentencing here. Ms. Malarini testified on page 121 of the record. The defendant threw me against the wall, grabbed me by my neck, and then we kind of wrestled around. Then on the day after that, he kicked me with a steel-toed boot. After she got the order of protection against the defendant, he has violated that by calling her constantly and going to her place of work, as you can find on page 121 and 122 of the record. Again, we have another ex-girlfriend, Ms. Buglielo, who described the victim as, and I quote, a very, very violent person, as you can find on 131 of the record. Ms. Buglielo testified that the defendant pushed me around, he hit me, he was rude to my family, told my sister that he would break her neck. And disturbingly, these threats were not empty, as her sister actually had to go to the hospital for stitches, as you can find on page 129 of the record. Therefore, the court's final analysis when it was sentencing the defendant is anti-court, and I'd like to read this for the court just to show you the context of what was happening. The court said, and I quote, I think you're a hardhead that likes to beat up on people when you drink. That's what I think you are. And you know, these little girls that testified here today are half your size. It shows how real big of a man you are. The defendant responds, yes, sir. The court then goes on to say, yeah, well, you know, it doesn't impress me a bit. And you know, you were back here in May of 2008. You had an aggravated battery charge that was reduced to a misdemeanor, as you can find on the record on page 63. I don't see any reason to give you probation. I don't see any reason to give you a minimum sentence. I think you need just to take you out of society for a while and protect people. That way you're not going to be beating up people. You're not going to be drunk and getting DUIs and driving while we're both and getting drunk and beating up on people. So I don't see any reason to give you any leniency at all. You've been juvenilely seen. You know what it's like to be locked. It didn't do you any good. So there, you can find that on page 141 of the record. Your Honor, simply put, rehabilitative potential is something the courts stress, they emphasize, they look at. But that does not supersede the seriousness of the offense. The defendant here is a threat to society. And his actions to speak, his culpable intent, not just here, but his criminal history, his longstanding history of disobeying authority and not seeking the help that he should have gotten had he had the chance, which he did. Your Honor, do you have any questions for me? You all confess the $5 trauma fee, right? Yes, I believe that was another issue, but that state confession. Okay. Any other questions? Thank you, Mr. Tate. As always, a pleasure, Your Honor. Nice job, both of you. Yes, thank you for your arguments, and we'll take the matters under advisement.